**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

_____

|                                          |     |                        |
|------------------------------------------|-----|------------------------|
| **MARY LUCY ARMENTROUT,**                | )   |                        |
|                                          | )   |                        |
| **Plaintiff,**                           | )   |                        |
|                                          | )   |                        |
| **v.**                                   | )   | **CIVIL NO. 3:10CV504** |
|                                          | )   |                        |
| **MICHAEL J. ASTRUE,**                   | )   |                        |
| **Commissioner of Social Security,**     | )   |                        |
|                                          | )   |                        |
| **Defendant.**                           | )   |                        |

_____)

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

This matter is before the Court for a report and recommendation pursuant to 28 U.S.C.

§ 636(b)(1)(B) on cross-motions for summary judgment.[1] Plaintiff, Mary Lucy Armentrout,

seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant

Commissioner denying her application for Social Security Disability ("DIB") payments. The

Commissioner's final decision is based on a finding by an Administrative Law Judge ("ALJ")

that Plaintiff was not disabled as defined by the Social Security Act ("the Act") and applicable

regulations.

For the reasons discussed herein, it is the Court's recommendation that Plaintiff's motion

for summary judgment (docket no. 7) and motion to remand (docket no. 8) be DENIED; that

_____

[1] The administrative record in this case has been filed under seal, pursuant to Local Civil
Rules 5 and 7(C). In accordance with these Rules, the Court will endeavor to exclude any
personal identifiers such as Plaintiff's social security number, the names of any minor children,
dates of birth (except for year of birth), and any financial account numbers from its consideration
of Plaintiff's arguments and will further restrict its discussion of Plaintiff's medical information
to only the extent necessary to properly analyze the case.

Defendant's motion for summary judgment (docket no. 10) be GRANTED; and that the final decision of the Commissioner be AFFIRMED.

## I. PROCEDURAL HISTORY

Plaintiff protectively filed for DIB on October 4, 2007, claiming disability due to tumors in both feet and four bulging discs in her lower back, with an alleged onset date of July 1, 2006. (R. at 119-21, 138, 142.)  The Social Security Administration ("SSA") denied Plaintiff's claims initially and on reconsideration.[2]  (R. at 63-67; 72-74.)  On August 12, 2009, accompanied by counsel, Plaintiff testified before an ALJ.  (R. at 7-44.)  On September 14, 2009, the ALJ denied Plaintiff's application, finding that she was not disabled under the Act where Plaintiff retained the residual functional capacity to perform her past relevant work as generally performed in the national economy; or, in the alternative, that based on her age, education, work experience, and residual functional capacity, there are jobs she could perform which exist in significant numbers in the national economy.  (R. at 965-76.)  The Appeals Council subsequently denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court.  (R. at 1-5.)

## II. QUESTION PRESENTED

Is the Commissioner's decision that Plaintiff is not entitled to benefits supported by substantial evidence on the record and the application of the correct legal standard?

---

[2] Initial and reconsideration reviews in Virginia are performed by an agency of the state government–the Disability Determination Services (DDS), a division of the Virginia Department of Rehabilitative Services–under arrangement with the SSA.  20 C.F.R. Part 404, Subpart Q; see also § 404.1503.  Hearings before administrative law judges and subsequent proceedings are conducted by personnel of the federal SSA.

# III. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, the Court is limited to determining whether the Commissioner's decision was supported by substantial evidence on the record and whether the proper legal standards were applied in evaluating the evidence. Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is more than a scintilla, less than a preponderance, and is the kind of relevant evidence a reasonable mind could accept as adequate to support a conclusion. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971); Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

In order to find whether substantial evidence exists, the Court is required to examine the record as a whole, but it may not "'undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary.'" Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (quoting Craig, 76 F.3d at 589). In considering the decision of the Commissioner based on the record as a whole, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Breeden v. Weinberger, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact, if the findings are supported by substantial evidence, are conclusive and must be affirmed. Perales, 402 U.S. at 390. While the standard is high, if the ALJ's determination is not supported by substantial evidence on the record, or if the ALJ has made an error of law, the district court must reverse the decision. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

A sequential evaluation of a claimant's work and medical history is required in order to determine if a claimant is eligible for benefits. 20 C.F.R. §§ 416.920, 404.1520; Mastro, 270

F.3d at 177.  The analysis is conducted for the Commissioner by the ALJ, and it is that process

that a court must examine on appeal to determine whether the correct legal standards were

applied, and whether the resulting decision of the Commissioner is supported by substantial

evidence on the record.

The first step in the sequence is to determine whether the claimant was working at the

time of the application and, if so, whether the work constituted "substantial gainful activity"

("SGA").[3]  20 C.F.R. §§ 416.920(b), 404.1520(b).  If a claimant's work constitutes SGA, the

analysis ends and the claimant must be found "not disabled," regardless of any medical

condition.  Id.  If the claimant establishes that she did not engage in SGA, the second step of the

analysis requires her to prove that she has "a severe impairment . . . or combination of

impairments which significantly limit[s] [her] physical or mental ability to do basic work

activities."  20 C.F.R. § 416.920(c); see also 20 C.F.R.404.1520(c).  In order to qualify as a

severe impairment that entitles one to benefits under the Act, it must cause more than a minimal

effect on one's ability to function.  20 C.F.R. § 404.1520(c).  At the third step, if the claimant has

an impairment that meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P,

Appendix 1 (listing of impairments) and lasts, or is expected to last, for twelve months or result

in death, it constitutes a qualifying impairment and the analysis ends.  20 C.F.R. §§ 416.920(d),

404.1520(d).  If the impairment does not meet or equal a listed impairment, then the evaluation

_____

[3] SGA is work that is both substantial and gainful as defined by the Agency in the C.F.R.
Substantial work activity is "work activity that involves doing significant physical or mental
activities.  Your work may be substantial even if it is done on a part-time basis or if you do less,
get paid less, or have less responsibility than when you worked before."   20 C.F.R. §
404.1572(a).  Gainful work activity is work activity done for "pay or profit, whether or not a
profit is realized." 20 C.F.R. ¢ 404.1572(b).  Taking care of oneself, performing household tasks
or hobbies, therapy or school attendance, and the like, are not generally considered substantial
gainful activities.  20 C.F.R. § 404.1572(c).

proceeds to the fourth step in which the ALJ is required to determine whether the claimant can

return to her past relevant work[4] based on an assessment of the claimant's residual functional

capacity ("RFC")[5] and the "physical and mental demands of work [the claimant] has done in the

past." 20 C.F.R. §§ 416.920(e), 404.1520(e). If such work can be performed, then benefits will

not be awarded. Id. However, if the claimant cannot perform her past work, the burden shifts to

the Commissioner at the fifth step to show that, considering the claimant's age, education, work

experience, and RFC, the claimant is capable of performing other work that is available in

significant numbers in the national economy. 20 C.F.R. §§ 416.920(f), 404.1520(f); Powers v.

Apfel, 207 F.3d 431, 436 (7th Cir. 2000) (citing Bowen v. Yuckert, 482 U.S. 137, 146, n.5

(1987)); Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The Commissioner can carry his

burden in the final step with the testimony of a vocational expert ("VE"). When a VE is called to

testify, the ALJ's function is to pose hypothetical questions that accurately represent the

claimant's RFC based on all evidence on record and a fair description of all the claimant's

impairments so that the VE can offer testimony about any jobs existing in the national economy

that the claimant can perform. Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). Only when

the hypothetical posed represents *all* of the claimant's substantiated impairments will the

testimony of the VE be "relevant or helpful." Id. If the ALJ finds that the claimant is not capable

---

[4] Past relevant work is defined as SGA in the past fifteen years that lasted long enough for an individual to learn the basic job functions involved. 20 C.F.R. §§ 416.965(a), 404.1565(a).

[5] RFC is defined as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR-96-8p. When assessing the RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. Id. (footnote omitted).

of SGA, then the claimant is found to be disabled and is accordingly entitled to benefits. 20 C.F.R. §§ 416.920(f)(1), 404.1520(f)(1).

## IV. ANALYSIS

The ALJ found at step one that Plaintiff had not engaged in SGA since the alleged onset of her disability. (R. at 967.) At steps two and three, the ALJ found that Plaintiff had the severe impairments of obesity, status post plantar surgery times four with plantar fasciitis[6], degenerative disc disease of the lumbosacral spine, bilateral foot and ankle osteoarthritis, right shoulder bursitis[7], fibromyalgia, anxiety, and depression, but that these impairments did not meet or equal any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, as required for the award of benefits at that stage. (R. at 967-69.) The ALJ next determined that Plaintiff had the RFC to perform sedentary work, except that she can only lift and/or carry ten pounds occasionally and eight pounds frequently; stand and/or walk two hours and sit for six hours in an eight-hour workday; occasionally reach in all directions; frequently but not constantly finger and handle; and occasionally climb, bend, balance, stoop, kneel, crouch, and crawl. (R. at 969-74.)

The ALJ then determined at step four of the analysis that Plaintiff could perform her past relevant work as a mortgage clerk, because such work did not require activities precluded by Plaintiff's RFC. (R. at 974-75.) Because the ALJ determined that Plaintiff was capable of performing her past relevant work, it was unnecessary to pursue the analysis to step five in which the Commissioner would have had the burden to show that, considering the claimant's age,

---

[6] Fasciitis is the inflammation of a sheet or band of fibrous tissue such as lies deep to the skin or forms an investment for muscles and various other organs of the body. Dorland's Illustrated Medical Dictionary 687, 692 (31st ed. 2007). Plantar fasciitis pertains to the sole of the foot. Id. at 476.

[7] Bursitis is the inflammation of a bursa (sac or saclike cavity filled with a viscid fluid and situated at places in the tissue at which friction would otherwise develop), occasionally accompanied by a calcific deposit in the underlying tendon. Dorland's at 266, 269.

education, work experience, and RFC, the claimant was capable of performing other work that is available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(f); 404.1520(f); Powers v. Apfel, 207 F.3d 431, 436 (7th Cir. 2000) (citing Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987)); Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).

However, the ALJ continued the analysis to step five, finding in the alternative that after considering Plaintiff's age, education, work experience, and RFC, and after consulting a VE, that there are other occupations which exist in significant numbers in the national economy that Plaintiff could perform. (R. at 975-76.) Specifically, the ALJ found that Plaintiff could perform occupations in mortgage work, sales positions, and as an order clerk. (R. at 975-76.) Accordingly, the ALJ concluded that Plaintiff was not disabled and was employable such that she was not entitled to benefits. (R. at 976.)

Plaintiff moves for a finding that she is entitled to benefits as a matter of law, or in the alternative, she seeks reversal and remand for additional administrative proceedings. (Pl.'s Mot. for Summ. J.) In support of her position, Plaintiff argues that: (1) the ALJ failed to properly weigh the medical source opinions; and (2) the ALJ improperly assessed Plaintiff's credibility. (Pl.'s Mem. in Supp. of Mot. for Summ. J. ("Pl.'s Mem.") at 19-26.) Defendant argues in opposition that the Commissioner's final decision is supported by substantial evidence and application of the correct legal standard such that it should be affirmed. (Def.'s Mot. for Summ. J. and Br. in Supp. Thereof ("Def.'s Mem.") at 10-21.)

A.     **The ALJ properly weighed the medical source opinions.**

Plaintiff contends that the opinion of treating physician Dr. Donato should have been assigned controlling weight by the ALJ. (Pl.'s Mem. at 19-21.) Plaintiff also argues that the ALJ erred in relying upon the opinion of state agency consultant Dr. Luc Vinh, M.D., and that

consulting physician Dr. Newell's opinion, to which the ALJ assigned significant weight, was inconsistent with the RFC as determined. (Pl.'s Mem. at 21-23.) Plaintiff further alleges that the ALJ failed to indicate what weight was assigned to the opinions of treating physician Dr. Marrow and Physician's Assistant Ms. Brown. (Pl.'s Mem. at 23.)

During the sequential analysis, when the ALJ determines whether the claimant has a medically-determinable severe impairment, or combination of impairments which would significantly limit the claimant's physical or mental ability to do basic work activities, the ALJ must analyze the claimant's medical records that are provided and any medical evidence resulting from consultative examinations or medical expert evaluation that have been ordered. See 20 C.F.R. § 416.912(f). When the record contains a number of different medical opinions, including those from the Plaintiff's treating physician(s), consultative examiners or other sources that are consistent with each other, then the ALJ makes a determination based on that evidence. See 20 C.F.R. § 416.927(c)(2). If, however, the medical opinions are inconsistent internally with each other, or other evidence, the ALJ must evaluate the opinions and assign them respective weight to properly analyze the evidence involved. 20 C.F.R. § 416.927(c)(2), (d). Under the applicable regulations and case law, a treating physician's opinion must be given controlling weight if it is well-supported by medically-acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. Craig, 76 F.3d at 590; 20 C.F.R. § 416.927(d)(2); SSR 96-2p. However, the regulations do not require that the ALJ accept opinions from a treating physician in every situation, e.g., when the physician opines on the issue of whether the claimant is disabled for purposes of employment (an issue reserved for the Commissioner), or when the physician's opinion is inconsistent with other evidence, or

when it is not otherwise well supported.  Jarrells v. Barnhart, No. 7:04-CV-00411, 2005 WL 1000255, at *4 (W.D. Va. Apr. 26, 2005).  See 20 C.F.R. § 404.1527(d)(3)-(4), (e).

The ALJ noted that Dr. Donato, a podiatrist, offered several opinions during his treatment of Plaintiff.  (R. at 974.)  After a comprehensive review of the medical evidence, the ALJ concluded that Dr. Donato's opinions were assigned "some probative weight to the extent that [Plaintiff's] impairments related to her foot do cause some limitations; however, the extreme extent of the limitations set out…is not well-supported and are inconsistent with the medical evidence of record."  (R. at 974.)  The ALJ also noted that Dr. Donato's conclusions regarding limitations not caused by Plaintiff's foot impairments were assigned only minimal probative weight, as Dr. Donato is a podiatrist and did not have medical expertise regarding such limitations unrelated to her foot condition.  (R. at 974.)

As the ALJ discussed, Dr. Donato opined that Plaintiff could ambulate independently for short periods, but that she required the use of a cane in her right hand; and that pain interfered with her ambulation, although she could regularly carry out her activities of daily living without assistance.  (R. at 786-93, 974.)  Dr. Donato further opined that Plaintiff could stand/walk for less than one hour in an eight hour day, but that she should not do so continuously; that she could lift up to ten pounds and carry up to five pounds occasionally; and that she should elevate both legs and feet hourly for ten to fifteen minutes above heart level.  (R. at 786-93.)  Dr. Donato also concluded that pain constantly interfered with Plaintiff's attention and concentration and that she was not a malingerer; that she was capable of high stress at work; and that she would need rest breaks every fifteen minutes.  (R. at 786-93.)  Dr. Donato offered no opinion as to her sitting limitations.  Also, Dr. Donato noted repeatedly that he felt Plaintiff would never be able to return to full-time, standing work.  (R. at 794, 904, 961.)

Plaintiff asserts that it is unclear what the ALJ meant by assigning "some" probative weight to Dr. Donato's opinions, and that the ALJ erred by failing to indicate which of the limitations were unsupported or inconsistent with the medical evidence. (Pl.'s Mem. at 20.) Plaintiff appears to argue that the ALJ must specifically isolate each limitation, and then provide specific reasons for accepting or rejecting such. However, the ALJ is not required to entertain such a detailed discussion, although it appears that the ALJ was quite thorough in this case. Instead, the Fourth Circuit, as the controlling authority for this Court, has held that a reviewing court must be able to determine what the basis is for the ALJ's ultimate decision. See Piney Mountain Coal Co. v. Mays, 176 F.3d 753, 762 n.10 (4th Cir. 1999). Indeed, the Court has recognized that "brevity can foster clarity." Lane Hollow Coal Co. v. Director, OWCP, 137 F.3d 799, 803 (4th Cir. 1998).

Here, this Court is able to discern which of Dr. Donato's suggested limitations were unsupported and inconsistent with the medical evidence, as the ALJ adequately explained what she meant by assigning Dr. Donato's opinions some probative weight. The ALJ specifically expressed agreement that Plaintiff's foot impairments caused some limitations; however, the "extreme extent" of Dr. Donato's limitations was not well-supported. (R. at 974.) The ALJ also noted that Dr. Donato was a podiatrist, and accordingly concluded that Dr. Donato's opinions regarding limitations not caused by Plaintiff's foot impairments were only entitled to minimal probative weight, as Dr. Donato "[did] not have medical expertise with respect thereto." (R. at 974.) Substantial evidence therefore supports the ALJ's decision in this regard.

Dr. Donato issued several opinions during his treatment of Plaintiff, which the ALJ acknowledged was not conservative. (R. at 973.) Dr. Donato began treating Plaintiff in January 2007, when Plaintiff presented with complaints of left foot pain, as well as "whole body" pain.

(R. at 349-50.) Dr. Donato recommended physical therapy, but Plaintiff returned the next month because she was still having "a lot" of pain. (R. at 349-50, 353.) Dr. Donato thereupon suggested that she have a "work-up" for arthritis, which was negative, and over the next few months advised Plaintiff to speak to her primary care physician about entering a pain management clinic. (R. at 353-55, 357.) On April 26, 2007, treatment records indicate that Plaintiff required surgery again on her left foot. (R. at 355-56.) Dr. Donato issued a note stating that Plaintiff would be out of work from April 26, 2007 through July 27, 2007, as she would be undergoing surgery and could not remain on her feet for extended periods of time. (R. at 355-56.) Treatment records indicate that Plaintiff appeared to recover well from her May 2007 surgery, and that Dr. Donato was satisfied with how she was progressing, with the hope that her pain would continue to decrease. (R. at 359-63.) In August 2007, the record indicates that Dr. Donato conferred with Plaintiff about returning to work, that a possible date to do so would be October 1, and that he felt that Plaintiff had improved "significantly" as concerned her pain. (R. at 363.) In December 2007, on what appears to be an insurance form, Dr. Donato noted that Plaintiff had no limitations on standing, walking, sitting, or squatting in an eight-hour work day. (R. at 863-64.)

However, in January 2008, Plaintiff returned to Dr. Donato with renewed complaints of foot pain and she subsequently underwent surgery yet further. (R. at 480.) In March 2008, Dr. Donato noted that Plaintiff should not engage in any prolonged standing or walking for more than one to two hours a day. (R. at 874.) In April 2008, notes indicate that Plaintiff still had some pain but was doing "okay." (R. at 573.) Although Dr. Donato apparently advised Plaintiff that a physical therapist would accommodate her financial situation, Plaintiff did not undertake physical therapy. (R. at 573-74.) In July 2008, it appears that Plaintiff had attended physical

therapy, and that she was "definitely improving some." (R. at 576.) Dr. Donato advised Plaintiff

at that juncture that she was going to have to find some way to work, even if she had some pain,

if her condition did not improve. (R. at 576.) In September 2008, Plaintiff complained of

worsening pain in her right foot, which was subsequently operated on in October 2008. (R. at

577, 620-21.) Though Dr. Donato stated in a May 1, 2009 letter that he continued to treat

Plaintiff, no further treatment notes after her 2008 surgery appear in the record.[8] (R. at 786-93.)

It is not in dispute that Plaintiff has undergone multiple surgeries for her foot

impairments. However, the ALJ found, and substantial evidence supports, that Plaintiff's

limitations as a result of such impairments are not so debilitating that Plaintiff is unable to

perform any substantial gainful activity. While it is apparent from the record that Plaintiff is no

longer capable of performing full-time work in which she must be upright all day, the record

supports the conclusion that Plaintiff is capable of performing a sedentary occupation. Indeed,

while Dr. Donato noted on several occasions that Plaintiff could never return to full-time

standing work, he did not opine on Plaintiff's ability to sit. (R. at 786-93, 794, 904, 961.) The

ALJ credited Dr. Donato's opinion when she limited Plaintiff to sedentary work which entailed

no more than two hours of standing or walking in an eight-hour day. (R. at 969-74.) However,

the ALJ could not fully credit Dr. Donato's opinion because of its inconsistency with the

treatment records. Although Plaintiff was unable to ambulate effectively immediately following

her surgeries, treatment records indicate that she recovered sufficiently between each procedure.

Furthermore, Dr. Donato opined that Plaintiff was able to independently ambulate for short

periods and could regularly maintain her activities of daily living without assistance. (R. at 786-

---

[8] A treatment record from December 7, 2009 indicates that Plaintiff returned to Dr.
Donato with renewed right foot pain. (R. at 949.) Although the record was not available to the
ALJ, the Court notes that Plaintiff's treatment appears to be on-going on an "as needed basis."
(R. at 949.)

93.)  In addition, while Dr. Donato opined that Plaintiff's impairments had persisted since July 1,

2006, the treatment record reveals that he did not begin treating Plaintiff until January 30, 2007,

and the first time he gave her a note excusing her from work was dated April 26, 2007.  (R. at

356, 786-93.)  He also noted, after her May 2007 surgery, that she should attempt to return to

work by October 2007.  (R. at 363.)  Dr. Donato further noted on an insurance form in December

2007 that Plaintiff had no limitations in standing, walking, or sitting.  (R. at 863-64.)  In July

2008, he once again advised her to attempt a return to work.  (R. at 576.)

Accordingly, Dr. Donato's opinion is somewhat inconsistent with his treatment records.

The ALJ adopted Dr. Donato's opinion that Plaintiff was no longer capable of performing full-

time work while standing, but she disagreed that such a limitation rendered Plaintiff totally

incapable of performing any substantial gainful activity.  Furthermore, the Court notes that the

ALJ's discussion of Dr. Donato's opinion and treatment records was thorough, and it cannot be

concluded that the ALJ fatally ignored the limitations he expressed in his opinion, as urged by

Plaintiff.  The ALJ also explicitly noted that she "[appreciated] and fully considered the well-

written letter by Counsel," which detailed all of Plaintiff's medical treatment and specifically

emphasized Dr. Donato's opinion and treatment records as indicative of Plaintiff's disability.  (R.

at 934-39, 973.)  It is therefore clear to this Court that the ALJ properly weighed Dr. Donato's

opinion.

The ALJ also noted that Dr. Donato's treatment records were consistent with Dr.

Newell's opinion.  Plaintiff argues that the ALJ's conclusions were, in fact, inconsistent with Dr.

Newell's opinion, and that the ALJ "cherry picked" only the limitations suggested by Dr. Newell

that supported her ultimate decision, while ignoring the limitations that did not.  (Pl.'s Mem. at

22-23.)  While Plaintiff is correct that an ALJ may not "pick and choose" only the evidence that

supports a particular position, it does not appear that the ALJ did so in this instance.  See Harris v. Comm'r of Soc. Sec., No. 2:04cv513, 2005 WL 1162530 at *8 (E.D. Va. May 12, 2005) (quoting Loza v. Apfel, 219 F.3d 378, 393 (5th Cir. 2000)); see also Switzer v. Heckler, 742 F.2d 382, 385 (7th Cir. 1984).

Dr. Newell, a consulting physician who examined Plaintiff in April 2008, noted that Plaintiff wore a brace on her left foot and ambulated with two crutches, although she was able to ambulate without the crutches, though with an antalgic gait.  (R. at 517.)  Dr. Newell further opined that Plaintiff could stand/walk for less than two hours in an eight-hour workday; could sit for about four hours; needed crutches for long distances and uneven terrain only, but otherwise could manage with a cane; could lift/carry up to ten pounds occasionally and frequently; had postural limitations to bending, stooping, and squatting; and could reach, handle, feel, grasp, and finger occasionally with the right upper extremity, and frequently with the left.  (R. at 518.)

Contrary to Plaintiff's assertions, the ALJ did not ignore Dr. Newell's opinions as to Plaintiff's sitting and standing limitations.  While the ALJ assigned "significant" probative weight to the opinion, the ALJ was not then required to adopt every limitation and incorporate them into the RFC analysis.  The ALJ instead weighed all of the medical evidence in reaching her RFC determination, rather than adopting only one physician's opinion entirely.  State agency physician Dr. Vinh, whose opinion the ALJ assigned "great" probative weight, opined in November 2008 that Plaintiff's complaints of significantly limited daily activities were fully credible, but that her condition was expected to improve.  (R. at 669-70.)  Specifically, Dr. Vinh found that Plaintiff was limited to standing for two hours in an eight-hour workday and could sit about six hours.  (R. at 665.)

Plaintiff appears to assert that Dr. Vinh erred when noting in his opinion that there were no treating physician opinions of record. (Pl.'s Mem. at 21-22.) However, at the time Dr. Vinh issued his opinion, no treating physician had yet issued an opinion. Plaintiff also argues that a non-examining physician's opinion, such as Dr. Vinh's, cannot constitute substantial evidence to uphold an ALJ's decision. (Pl.'s Mem. at 22.) While the Court acknowledges that Dr. Vinh's opinion alone is not substantial evidence to support the ALJ's decision, the Court also notes that Dr. Vinh's opinion is simply one factor that the ALJ relied upon in reaching her decision. The ALJ also considered the treating physicians' opinions, the medical evidence of record, and Plaintiff's own statements.

While Plaintiff contends that the ALJ erred by not considering Dr. Marrow's or physician's assistant Ms. Brown's opinions, neither Dr. Marrow nor Ms. Brown issued opinions that the ALJ was required to weigh. As Plaintiff noted, Dr. Marrow opined that Plaintiff was "permanently medically disabled" due to a combination of multiple impairments, and Ms. Brown opined that Plaintiff was a "good candidate for disability". (Pl.'s Mem. at 23; R. at 942, 944.) Dr. Marrow also noted that Plaintiff could not stand or walk for six hours daily, and opined that Plaintiff was disabled on that basis alone. (R. at 942.) Such statements are too speculative as to employability, and thereby undeserving of any meaningful probative weight. See SSR 96-5p. While the opinions listed Plaintiff's multiple impairments, neither statement provided specific information concerning Plaintiff's functional limitations resulting from the impairments. Ms. Brown also noted that Plaintiff had chronic pain related to her injuries, "and thus, disability." (R. at 944.) However, an individual does not have to be pain-free in order to be found not disabled. See Hays v. Sullivan, 907 F.2d 1453, 1457-58 (4th Cir. 1990); see also Dumas v. Schweiker, 712 F.2d 1545, 1552 (2d Cir. 1983). Further, the ALJ specifically discussed the medical records

received from both Dr. Marrow and the orthopaedic office at which Ms. Brown was employed, and found no evidence to support a finding that Plaintiff was totally disabled. (R. at 971-74.)

Accordingly, the Court recommends a finding that the ALJ properly weighed the medical source opinions, and substantial evidence supports the determination with respect to each. The ALJ was not required to assign weight to opinions that speculated as to Plaintiff's employability, as such a determination is left to the Commissioner; and the ALJ was not required to assign Dr. Donato's opinion controlling weight, as it was not entirely consistent with the other medical evidence of record, including his own treatment notes. Therefore, it is recommended that the ALJ's decision be affirmed in this regard.

**B.      The ALJ properly assessed Plaintiff's credibility.**

Plaintiff contends that the ALJ erred in finding that Plaintiff was not credible to the extent that her statements were inconsistent with the determined RFC. (Pl.'s Mem. at 24-26.) Plaintiff argues that the ALJ did not cite any substantial evidence contradicting Plaintiff's claims; that the ALJ's reliance on Plaintiff's daily activities was improper; and that Plaintiff was "entitled" to have the extent of her limitations established by her testimony alone. (Pl.'s Mem. at 24-26.)

After step three of the ALJ's sequential analysis, but before deciding whether a claimant can perform past relevant work at step four, the ALJ must determine the claimant's RFC. 20 C.F.R. §§ 416.920(e)-(f), 416.945(a)(1). The RFC must incorporate impairments supported by the objective medical evidence in the record and those impairments that are based on the claimant's credible complaints. In evaluating a claimant's subjective symptoms, the ALJ must follow a two-step analysis. Craig v. Charter, 76 F.3d 585, 594 (4th Cir. 1996); see also SSR 96-7p; 20 C.F.R. §§ 404.1529(a) and 416.929(a). The first step is to determine whether there is an

underlying medically determinable physical or mental impairment or impairments that reasonably could produce the individual's pain or other related symptoms. Id.; SSR 96-7p, at 1-3. The ALJ must consider all the medical evidence in the record. Craig, 76 F.3d at 594-95; SSR 96-7p, at 5, n.3; see also SSR 96-8p, at 13 (specifically stating that the "RFC assessment must be based on *all* of the relevant evidence in the case record") (emphasis added). If the underlying impairment reasonably could be expected to produce the individual's pain, then the second part of the analysis requires the ALJ to evaluate a claimant's statements about the intensity and persistence of the pain and the extent to which it affects the individual's ability to work. Craig, 76 F.3d at 595. The ALJ's evaluation must take into account "all the available evidence," including a credibility finding of the claimant's statements regarding the extent of the symptoms and the ALJ must provide specific reasons for the weight given to the individual's statements. Craig, 76 F.3d 595-96; SSR 96-7p, at 5-6, 11.

This Court must give great deference to the ALJ's credibility determinations. See Eldeco, Inc. v. NLRB, 132 F.3d 1007, 1011 (4th Cir. 1997). The Court of Appeals for the Fourth Circuit (as the immediate controlling appellate authority for this Court) has determined that "[w]hen factual findings rest upon credibility determinations, they should be accepted by the reviewing court absent 'exceptional circumstances.'" Id. (quoting NLRB v. Air Prods. & Chems., Inc., 717 F.2d 141, 145 (4th Cir. 1983)). Therefore, this Court must accept the ALJ's factual findings and credibility determinations unless "'a credibility determination is unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all.'" Id. (quoting NLRB v. McCullough Envtl. Servs., Inc., 5 F.3d 923, 928 (5th Cir. 1993)).

Furthermore, it is well established that Plaintiff's subjective allegations of pain are not, alone, conclusive evidence that Plaintiff is disabled. See Mickles v. Shalala, 29 F.3d 918, 919

(4th Cir. 1994). The Fourth Circuit has determined that "subjective claims of pain must be supported by objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant." Craig, 76 F.3d at 591.

Here, the ALJ found that while Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, her statements concerning the intensity, persistence, and limiting effects of such were not credible to the extent that they were inconsistent with the determined RFC. (R. at 970.) In addition to considering Plaintiff's written statements and testimony, the ALJ noted that the objective medical evidence did not establish that Plaintiff's ability to function was limited to the degree alleged. (R. at 973.) The ALJ stated that with the exception of treatment for her feet and ankles, treatment for Plaintiff's other "intermittently complained of conditions" remained conservative throughout the relevant period. (R. at 973.) The ALJ also noted that while Plaintiff's feet and ankles had remained troublesome, her symptoms had not been so limiting as to prevent her from "self care [sic], meal preparation, shopping for groceries with assistance, and occasional driving." (R. at 973.) The ALJ also noted that while Plaintiff suffered from significant limitations with respect to standing and walking, as well as some limitations with regard to postural activities, her symptoms in conjunction with her admitted activities were not so limiting as to preclude the performance of any work. (R. at 973.)

Plaintiff testified that her feet "kill her;" that she could not lift her arms overhead "hardly;" that she drove seldom; that her sister did most of her housework; that she had issues with her right arm and a swollen right shoulder; that her left hip was "bad;" that she could not use her right wrist or right arm at all, and that she could not use her left arm well either; that she had chronic fatigue and pain; that she had "a lot" of stomach problems; that the pain medication

barely alleviated her pain; that her pain was a 9-10 on a 1-10 scale of severity on a typical day; that she could only sit for fifteen minutes and stand for five to ten minutes; that her feet and legs hurt all the time; that she did not climb stairs; that she could not use her fingers or write beyond her signature; that she had daily issues with her hands; that her concentration and memory was not good; and that she could only focus mentally for ten to fifteen minutes at a time. (R. at 15-43.) In written statements, Plaintiff reported that she actively cared for her dog; that she needed assistance dressing herself and caring for her hair; that she had to utilize a rider cart while shopping; that she could not sit for longer than thirty minutes at any one time; that her friends helped care for her and her dog; and that she could pay attention "as long as I want." (R. at 159-66.) However, many of Plaintiff's statements are not corroborated by the medical evidence of record.

As discussed earlier, Plaintiff's treatment for her feet and ankle impairments required multiple surgeries and resulted in significant limitations in terms of standing and walking. However, treatment for Plaintiff's other impairments was generally conservative. With regard to Plaintiff's wrist impairment, she had surgery in 2008 and reportedly recovered satisfactorily. (R. at 335-42, 555, 732.) Plaintiff was released from care, as far as her wrist, in November 2008. (R. at 736.) Plaintiff's right shoulder pain was treated with cortisone shots, which were at least generally successful in alleviating her pain. (R. at 556, 733, 735-39.) As to Plaintiff's back pain, an x-ray of her lumbosacral spine in July 2009 revealed only minor degenerative changes with no acute abnormality. (R. at 958.) An April 2009 x-ray also revealed no fractures of Plaintiff's tailbone. (R. at 707.) As to Plaintiff's alleged difficulty with concentration and memory, she reported in January 2008 that she could pay attention "as long as I want," and there do not appear to be treatment records documenting complaints of her difficulty in maintaining focus. (R. at

159-66.)  While Dr. Marrow noted that the medications Plaintiff was on would make it difficult to maintain focus, and while that may be a general side effect of such medications, it does not appear that Plaintiff complained of such a difficulty during treatment.  (R. at 677-94, 942.)  As to Plaintiff's alleged gastrointestinal issues, records from a gastroenterology clinic specifically noted that Plaintiff had a history of noncompliance with the treatment regimen of the clinic.  (R. at 804.)

In summary, it appears that Plaintiff consistently complained of and received treatment for her foot and ankle impairments, which the ALJ accounted for by limiting her to sedentary work involving only two hours of standing or walking.  The ALJ also credited Plaintiff's shoulder and wrist complaints by limiting her reaching in all directions, and her ability to finger and handle.  The ALJ further credited Plaintiff's complaints of back pain, to an extent, by limiting her ability to climb, bend, balance, stoop, kneel, crouch, and crawl.  Therefore, it appears that the ALJ did not ignore Plaintiff's claims of pain, but rather credited them to the extent that they were consistent with the medical record.  The ALJ is not required to simply adopt Plaintiff's allegations once she demonstrated that she suffered impairments likely to produce pain.  Instead, the ALJ must reconcile such allegations with the objective medical evidence and all the evidence of record.  See 20 C.F.R. § 404.1529(c)(1).  Although Plaintiff asserts that there is no evidence contradicting her testimony, there appears, at the same time, to be little evidence corroborating her extreme characterization of her limitations.  As previously noted, Plaintiff's assertions of being unable to use her arms, right wrist, or hands are not consistent with the evidence of record that her wrist healed well after surgery and that cortisone medication alleviated her pain.  Furthermore, x-rays of Plaintiff's spine and tailbone demonstrated only minor degenerative changes, with no acute abnormalities or fractures.

Moreover, Plaintiff exhibited a history of noncompliance with the dictates of the gastroenterology clinic to which she was referred. In addition, Plaintiff occasionally drove and attended church, and she was able to shop on a motorized cart. As noted earlier, Dr. Donato opined that Plaintiff could regularly carry out her activities of daily living without assistance, and even advised her that she would have to return to work despite her complaints of continuing pain.

Substantial evidence supports the ALJ's decision that Plaintiff's pain and resulting limitations are not so severe as to preclude all employment. The ALJ considered all relevant factors and the entirety of the record before reaching a conclusion. As noted, this Court must give great deference to an ALJ's credibility determination. Accordingly, the Court recommends that the ALJ's decision be affirmed.

## V. CONCLUSION

Based on the foregoing analysis, it is the recommendation of this Court that Plaintiff's motion for summary judgment (docket no. 7) and motion to remand (docket no. 8) be DENIED; that Defendant's motion for summary judgment (docket no. 10) be GRANTED; and, that the final decision of the Commissioner be AFFIRMED.

Let the Clerk forward a copy of this Report and Recommendation to the Honorable Robert E. Payne and to all counsel of record.

### NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of**

**any right to a <u>de novo</u> review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

_____/s/_____
DENNIS W. DOHNAL
UNITED STATES MAGISTRATE JUDGE

Date:  June 2, 2011
Richmond, Virginia